# CIRCUIT COURT OF BALTIMORE CITY.

Filed March 7, 1907.

## RALPH WALSH ET AL.
## VS.
## ELLEN M. TURNBULL.

*A. W. Machen* and *A. W. Machen, Jr.*, for plaintiffs.
*David G. McIntosh* for defendant.

ELLIOTT, J.—

The bill of complaint in this cause has been filed for the purpose of invoking the aid of this court in an effort to redeem from the operation and effect of a lease, a certain lot of ground situate in the city of Baltimore, on the west side of Light street, a portion of which property has been taken by the Burnt District Commission of Baltimore.

The lease was executed on the 27th day of November, 1878, by Ellen M. Turnbull to John Carroll Walsh, since deceased, whose estate is represented by the complainants. The claim made is that the transaction though in form a lease, was really a mortgage, and that there exists now in the complainants the right to pay off the mortgage. The answer of the defendant is that the transaction was in form and in fact a leasing, and that the rent created has become irredeemable by reason of the expiration of the period of redemption.

It so happens that the only person now living who actually participated in the transaction attending the execution of the lease in question was Henry C. Turnbull, a brother of the defendant, produced as a witness in her behalf. It therefore becomes important that we should carefully examine his testimony, in order to determine how far it supports the theory that the defendant intended to purchase a ground rent, and not to make a loan. It is to be noted in this connection, that the defendant had nothing to do, personally, with the matter, except possibly to draw the check for the money, but all the negotiations and the final decision to make the investment were had and made by Henry C. Turnbull. He says: "I had no written authority from my sister to make investments for her, but at that time she had quite a large sum of money for investment, and I was requested by her to invest the same in ground rents, and under such instructions I made numerous investments on her behalf, all of which she still holds." He also says, "I invested a very considerable amount of money through the agency of Henry N. Bankard, whom I personally knew very well, and whose judgment as a real estate expert I had at that time full confidence in."

It seems fair to conclude, therefore, that what Mr. Turnbull was looking for at that time were good income producing investments, and that in the making of such investments he was very largely controlled by the advice of Mr. Bankard, in whose judgment he had entire confidence. Turnbull, himself, was not a real estate man, and had no experience in that line. So there is no reason to believe either that he restricted Mr. Bankard to any particular method or kind of investment, or that he had had any sufficient knowledge or experience to cause or enable him to make a choice himself.

The same may be supposed concerning his sister, who doubtless had as little experience as he himself. When, therefore, Henry C. Turnbull says: "If Mr. Bankard had asked me to loan the money on any piece of property, I should have declined to have considered a mortgage." I do not find any such previous experience as enabled or induced the defendant, as her brother, to make such a fine distinction as that between a mortgage and a ground rent, or any such reliance upon themselves as would have led them to refuse to make a mortgage, if the suggestion had been made by a real estate broker, like Mr. Bankard, in whose judgment the brother had full confidence. Especially is this case, when I perceive that, whatever might be claimed since, the investment actually made differed, when made, in no practical or effectual manner from a mortgage for ten years, payable at the expiration of that period. I must therefore conclude that Mr. Turnbull's present recollection of what he then thought, or intended, is at fault. Nor does the fact that ten

years later, Henry C. Turnbull was willing to make a loan by way of mortgage upon the same property for the same amount, and at a lower rate of interest, tend to convince me that he had any unreasonable prejudice against a mortgage and in favor of a ground rent, as a method of investment.

It may not be entirely impertinent in this connection to call attention to several other errors of recollection on the part of Henry C. Turnbull, as, for instance, the matter of the recording of the deed, and the division of commissions.

There is another item of evidence which may help us toward a solution of this question. At the time when the application was made by Bankard to Turnbull, the ground rent was not in existence, and there is every reason to believe that the former explained to the latter that the money was desired by Walsh to pay for the purchase he was about to make.

The transaction had, therefore, the essential features of a loan with the intention of giving as security the property purchased, and I am convinced that the form of the investment was chosen by Walsh and not by Turnbull.

The former's attitude ten years later when he wanted a loan to redeem the ground rent, but declined to accept the latter's suggestion, and gave a mortgage, indicates not that he had deliberately chosen a ground rent, but that he was prejudiced against the form of a mortgage, and that it was that prejudice of Walsh, and not the choice of the defendant, that had determined the form of the original investment.

So much has been said relative to the circumstances attending the transaction.

But there is another feature showing on the face of the papers.

Walsh needed $20,000 to pay the purchase money and $500 to pay commissions. So the amount paid to him by the defendant was $20,500, as recited in the deed from him to her. But the amount mentioned in the lease as that for which the property could be redeemed was $20,000. Why was this difference? Can it be supposed, but that the quarterly payments together with the amount to be paid at the end of the period, were intended to pay back all that had been loaned,

namely, $20,500. And if this is true, does it not indicate that the apparent rate of six per cent. was really fictitious, and that the transaction was not the simple case of the purchase and sale of a ground rent at a definite, clear and disclosed rate, but an arrangement by which a borrower was to repay a loan made to him, in a certain definite time, together with interest thereon in the meanwhile. I think the indications are all that way and it would extend this opinion beyond necessary limits, were I to refer to all the indications which point in the same direction. I shall therefore content myself with quoting in conclusion from the language of the Court of Appeals in the case of Pickett vs. Wadlow, 94 Md., at page 567: "It is now the established doctrine that courts of equity will look beyond the mere form and terms of the instrument, to the real transaction; and whenever the real transaction is shown to be one of security, and not of sale, the court will treat the matter accordingly. In all such cases the equity upon which the court acts arises from the real nature of the transaction," &c.

To put the plaintiffs in the position of being obliged, in order to redeem their property, to pay whatever sum of money the defendant might choose to exact in the extinguishment of the rent, would be to bring about a result which I am sure was not in either the contemplation or the intention of the parties to the transaction at the time it was made. I shall, therefore, sign a decree permitting the plaintiffs to redeem the property upon payment of the sum of $20,000 and accrued interest.